UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

Eastern District of Kentucky
F I L E D

OCT 2 5 2016

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

JAMES J. JULICK,　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　Petitioner,　　　　　　　　　　 ) Civil Action No. 16-CV-107-HRW
　　　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
JODIE SNYDER-NORRIS, WARDEN,　　　 )　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　　 )　　　　　**AND ORDER**
　　　　Respondent.　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )

**** **** **** ****

Inmate James J. Julick is confined by the Bureau of Prisons ("BOP") in the

Federal Correctional Institution ("FCI") located in Ashland, Kentucky.  Julick has

filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241,

challenging his prison disciplinary conviction at FCI-Ashland which resulted in the

loss of forty (40) days of his good-time credits ("GTC").  Julick seeks an order

expunging that disciplinary conviction and reinstating his forfeited GTC.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243,

the Court must deny the relief sought "if it plainly appears from the petition and

any attached exhibits that the petitioner is not entitled to relief."  Rule 4 of the

Rules Governing § 2254 Cases in the United States District Courts (applicable to §

2241 petitions pursuant to Rule 1(b)).  Because Julick is not represented by an

1

attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). Thus, at this stage of the proceedings, the Court accepts as true Julick's factual allegations and liberally construes his legal claims in his favor. But as explained below, however, Julick's habeas petition will be denied because he has not alleged facts supporting his claim that his disciplinary conviction should be expunged or that his GTC should be reinstated.

## BACKGROUND

On June 16, 2014, Lieutenant "E." Nelson, Correctional Officer at FCI-Ashland, issued Incident Report charging Julick with "Refusing to Provide a Urine Sample," in violation of BOP Prohibited Acts Code ("PAC") 110.[1] [D. E. No. 1-1, pp. 2-3] The Incident Report alleged that on June 16, 2014, at 8:34 a.m., Nelson ordered Julick to provide him with a urine sample within two hours, *i.e.*, on or before 10:34 a.m.; that Nelson provided Julick with 8 ounces of water, which Julick consumed; that Julick failed to provide Nelson with a urine sample within the allowable two-hour compliance period; and that at six (6) minutes past

---

[1]

The BOP ranks violations of prison rules by severity, starting with "Greatest Category" (Code Nos. 100-199); then "High Category" (Code Nos. 200-299); then "Moderate Category" (Code Nos. 300-399); and concluding with "Low Moderate Category" (Code Nos. 400-499). *See* 28 C.F.R. § 541.3(a). Sanctions applicable to each category of offenses are listed in Table 1 of § 541.3, *Prohibited Acts and Available Sanctions*. The charge of "Refusing to Provide a Urine Sample" falls in the category of "Greatest Severity" of Prohibited Acts. Julick did not attach a copy of the June 16, 2014, Incident Report charging him with the PAC 110 offense; the Court obtained that information from the Report prepared by the FCI-Ashland hearing officer who presided over the disciplinary hearing. *See* D. E. No. 1-1, pp. 2-4.

2

the two-hour deadline, Nelson provided Julick with a final opportunity to produce a urine sample, but Julick still failed to produce a urine sample as instructed.

On July 11, 2014, the disciplinary hearing at FCI-Ashland transpired, over which Disciplinary Hearing Officer ("DHO") "R." Baker presided. On August 7, 2014, DHO Baker prepared a Report summarizing all aspects of the proceeding. *See* D. E. No. 1-1, pp. 2-4. The Report states that Julick appeared at the hearing, acknowledged receiving a copy of the Incident Report, waived staff representation, and stated that he understood his rights. [*Id.*, p. 2, § II-III] The Report states that Julick admitted that he failed to provide a urine specimen, but explained that he needed to have a bowel movement before he could urinate, and that he could not provide a urine sample while he was standing. [*Id.*, § III (B)]

DHO Baker found Julick guilty of the PAC 110 offense. [*Id.*, p. 3, § V.] In reaching his decision, DHO Baker considered the facts and charges set froth in the Incident Report; the copy of the chain of custody for urinalysis; and Julick's confession that he did not produce the urine specimen within the two-hour time. [*Id.*, p. 3, § V, "Specific Evidence Relied on to Support Findings"] DHO Baker rejected Julick's defense that he was unable to provide the urine sample without being allowed to sit down and have a bowel movement, finding that his explanation did not justify his failure to provide a urine sample within the

3

allowable 2-hour time-period.[2]  DHO Baker imposed the following sanctions:  (1) the disallowance of forty (40) days of Julick's GTC; (2) confinement in disciplinary segregation for fifteen (15) days, and (3) the loss of commissary and phone privileges for three (3) months.  [*Id.*]

In August 2014, Julick appealed the DHO's findings to the BOP Mid-Atlantic Regional Office ("MARO"), arguing that the DHO based his findings on insufficient evidence; that medications which he (Julick) was taking at the time prevented him from being able to provide his urine sample within prescribed the two-hour time-period; that he could and should have been given more time in which to provide the urine sample; and that he did not receive his copy of the DHO Report in a timely manner.  [D. E. No. 1-2, pp. 2-3]

On October 9, 2014, the MARO denied Julick's BP-10 appeal.  [*Id.*, pp. 4-5] Noting its authority to approve, modify, reverse, or remand the findings of the DHO, the MARO explained that the DHO Report in Julick's case had been amended "... to more accurately reference the specific evidence the DHO relied

---

[2]

DHO Baker stated:

> I considered your defense that you may have been able to provide a sample had you been allowed to sit down and have a bowel movement while providing the sample, however, had the staff allowed this they would not have been able to clearly see you provide the sample as required by policy.  Accordingly, I have concluded that the code 110 charged against you in this case is appropriate and warranted.

[*Id.*]

4

upon to make his decision, and to address conflicting evidence. You will receive an amended incident report in the very near future." [*Id.*, p. 4] Even so, the MARO concluded that the DHO's findings were accurate, adequate, and based on the greater weight of the evidence, which the MARO identified as the Incident Report, and that DHO substantially followed the required disciplinary procedures. [*Id.*, pp. 4-5] The MARO further determined that Julick provided no evidence that he had a medical condition which precluded him from being able to provide a urine sample within the ordinary two-hour time limit.[3]

The MARO also rejected Julick's argument that he was not provided with a copy of the DHO Report in a timely manner, noting that BOP policy provides that the DHO shall give the inmate a written copy of the decision and disposition, ordinarily within 15 days of the DHO's decision; that at the hearing, the DHO informed Julick that he had twenty (20) calendar days from the date on which he received a copy of the DHO report in which to appeal; and that the disciplinary record indicated that Julick received and signed a copy of the original DHO report on August 13, 2014. [*Id.*, p. 4] The MARO therefore concluded that Julick failed to demonstrate that his appeal rights were any way hindered.

---

[3] Under the BOP's applicable regulation, the failure to provide a urine sample within a two hour period is deemed to be a refusal unless the inmate rebuts the presumption during the disciplinary process. 28 C.F.R. § 550.31(a).

Following the MARO's decision, the DHO Report was amended on October 14, 2014, and Julick received his copy on November 18, 2014. *See* D. E. No. 1-4, p. 3-4. In Section V of the Amended DHO Report, "Specific Evidence Relied on to Support Findings," the DHO provided more detailed reasons explaining whye he rejected Julick's claim that he was physically unable to produce a urine sample within two hours of request, and why he determined that Julick was not entitled to more time in which to produce the urine sample. The DHO stated:

> The specific evidence relied upon to support this finding was the written statement of E. Nelson, Lieutenant, who reported at 8:34a.m you were requested to provide a urine sample. You were unable to provide a sample at that that time and you were informed by Lieutenant Nelson you had two hours to provide a sample. You were provided 8oz of water, which you consumed all 8oz. Between 8:34am and 10:34am you attempted to provide a urine sample on several occasions, but you were unable to do so. At 10:40 a.m., six minutes beyond the allowable time limit, you were allowed a final opportunity to provide a urine sample. You still failed to provide a sample. Program Statement 6060.08 states, "If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff must file an incident report." While this Program Statement allows provisions for the Lieutenant to extend the two hour time frame in some cases, I find these circumstances do not apply to you in this situation and policy was properly applied. **Specifically, policy allows for time extensions due to documented medical or psychological problems, dehydration, ect. You were unable to provide any documentation that would support a requirement for extending the two hour time frame.**
>
> In deciding this case I considered your defense that you may have been able to provide a sample had you been allowed to sit down and have a bowel movement while providing the sample, however,

6

Program Statement 6060.08 clearly states, "To eliminate the possibility of diluted or altered samples, staff shall keep the inmate under direct visual supervision during this two-hour time period, or until a complete sample is furnished." **Had the staff allowed you to sit down and have a bowel movement while providing the sample they would not have been able to clearly see you provide the sample as required by policy and would have opened the possibility diluting or contaminating the sample. Therefore, I find the request by you to sit down while providing the urine sample was not a reasonable or a permissible request. I find staff did properly follow policy in your supervision during the urinalysis and the time frame you were provided to supply the sample.** Having determined staff did follow policy it becomes clear that you were provided with the necessary provisions to supply the urine sample, but you failed to do so. Program Statement 6060.08 clearly states, "An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period." Accordingly, I have concluded that the code 110, Refusing to Provide a Urine Sample, charged against you in this case is appropriate and warranted

[D. E. No. 1-4, pp. 3-4]

On November 19, 2014, Julick appealed the MARO's decision, asserting essentially the same arguments he had advanced before the MARO. [D. E. No. 1-5, pp. 1-3] Julick argued that he suffered from a medical condition which impaired his urine flow; that on the morning of June 16, 2014, he had had not taken his water pill; that had he done so, his he would have had a urine flow; and that on that date, he had a "dental callout," and did not want the constant need to urinate to interfere with his dental appointment. [*Id.*] Julick asked that his disciplinary conviction be expunged and that his GTC be reinstated.

On April 29, 2016, Ian Connors, the Administrator of the BOP's National Inmate Appeals (BOP Central Office), denied Julick's final administrative appeal. *Id.*, p. 4. Like the MARO, Connors rejected Julick's' allegation that on June 16, 2014, his medical condition and prescribed medications prevented him having a urine flow and from producing a urine sample within the two-hour period under BOP policy. Connors concluded that Julick's medical evidence and other records contradicted Julick's argument. Connors explained:

> We contacted medical staff at your facility and learned you were prescribed a diuretic to manage the volume overload noted by the peripheral edema from your liver disease. The medication works at the level of the kidney, not the bladder, by inhibiting the reabsorption of sodium and chloride. It allows the kidneys to get rid of excess fluid in the system but it does not act as a direct lever to enable you to urinate. In other words, you do not need a water pill for urine flow. Furthermore, records indicate you did have a dental appointment that morning, but you failed to show for the appointment.

[*Id.*]

## ALLEGATONS OF THE § 2241 PETITION

Julick seeks an order setting aside his disciplinary conviction and reinstating his forfeited GTC. Julick claims that the DHO overlooked and/or ignored medical evidence which explained that on June 16, 2014, his medical condition and prescribed medications prevented him from producing a urine sample within the two-hour time period allowed by BOP policy. Julick alleges that the DHO report

8

is incomplete as to the defenses that he asserted, claiming, "The DHO Report presents some, but not all, of the reasons that Julick provided at the hearing in the DHO Report." [D. E. No. 1, p. 2, ¶ 5]

Julick contends that when the disciplinary hearing was conducted on July 11, 2014, DHO Baker was aware that he (Julick) was being held in the Segregated Housing Unit ("SHU") of the prison, and was also aware he did not have access to his medical records while he was being held in the SHU. Julick states that he requested his medical records after he was released from the SHU, but that he did not receive the medical records which supported his arguments on appeal (*i.e.*, that on June 16, 2014, his medication and medical condition prevented him from producing a urine sample on demand within two hours) until after the deadline for filing an appeal had expired. [*Id.*, p. 3, ¶ 8] Julick also asserts that the Amended DHO Report states that he failed to produce any medical evidence/medical records in support of his claims, but that the DHO "...knew Julick could not obtain [medical records] while he was confined to the SHU." [*Id.*, p. 4; *see also, id.*, pp. 5-6 ¶ 17]. Julick appears to suggest that prior to the hearing, the DHO should have researched his medical condition before concluding that he did not have a medical condition which would have affected his ability to produce a urine specimen within two hours of the request.

9

Julick attaches 22 pages of medical documents [D.E. No. 1-3] which obtained on September 2, 2014, through a Freedom of Information Act request. Julick argues that these medical documents support his argument that on June 16, 2014, his medication and medical condition prevented him from producing a urine sample within two hours of being directed to do produce a urine sample. Julick further contends that the DHO based his adverse findings entirely on presumptions created by his (Julick's) inability to provide a urine sample within two hours, and that in the Amended DHO Report, the DHO refused to consider evidence which would have rebutted the inference that he refused to provide the urine sample within the allowable two-hour time. In other words, Julick claims that the DHO improperly treated his failure to produce the urine sample within the two-hour period as an "irrebuttable presumption," in violation of 28 C.F.R. § 550.31.

Julick contends that pursuant to PS 6060.08, the prison staff could have accommodated his request to have a bowel movement prior to urine flow by removing him to a dry cell to obtain the urine sample. [*Id.*, p. 6, ¶ 18] He further asserts that he has an enlarged prostate and has been prescribed several medications that can cause decreased urination; that these drugs prevented him from providing a urine sample within the allotted two-hour period; and that the DHO, MARO and BOP Central Office ignored the side effects which these drugs.

10

Julick identifies the drugs that he was taking as Furosedmide tablets, Hydrochlorothiazide capsules, Ipratropium Inhalation Aerosol Suspension (HFA), Ketorolac injection, and Lisinopril tablets, and Ribavirin capsules. [*Id.*, pp. 6-7, ¶ 19] Julick claims that according to the documents he has filed as D. E. No. 1-3. These medications adversely affected his urine flow and prevented him from being able to urinate within a two-hour period on June 16, 2014.

Finally, Julick challenges Ian Connors' assessment of his medical condition on June 16, 2014, claiming that Connors ignored his medical records which revealed that he (Julick) did not take his diuretic pill on June 16, 2014. Julick claims that his failure to take his water pill prevented him from having regular urine flow on that day, and that he did not appear for his scheduled dental appointment on that date "… because of the urine testing and subsequent confinement in the SHU." [*Id.* p. 7, ¶ 21]. Julick alleges that the disciplinary conviction and resulting loss of GTC violated his right to due process of law in violation of the Fifth Amendment of the U.S. Constitution, and he seeks an order directing the BOP to restore his 40 days of forfeited GTC.[4]

---

[4]

Julick's projected release date is May 25, 2017. *See* https://www.bop.gov/inmateloc/ (last visited on October 6, 2016).

# DISCUSSION

The due process to which prisoners are entitled during the prison disciplinary process is set forth in 28 C.F.R. § 541.8[5] and in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the United States Supreme Court explained that when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive: 1) written notice of the charges at least 24 hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to the evidence relied on and reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex. *Wolff*, 418 U.S. at 564-566.

Under this limited framework, the Court is unable to set aside either Julick's disciplinary conviction or the resulting sanctions. A finding of guilt in a disciplinary proceeding need only be "'supported by some evidence in the

---

[5] Title 28 C.F..R. § 541. 8(f) states in pertinent part:

> **Evidence and witnesses.** You are entitled to make a statement and present documentary evidence to the DHO on your own behalf. The DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.

12

record.'" *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)).   The "some evidence" standard is a lenient one, requiring only "a modicum of evidence," and is met if the record contains any evidence that could support the [DHO's] decision. *Hill*, 472 U.S. at 455–56; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Id*. at 457.   A court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision. *Id*.

Here, the Incident Report, standing alone, constituted the "some evidence" which supported the DHO's determination that Julick was guilty of the PAC 110 violation.   During the administrative remedy process, and in his § 2241 petition, Julick claimed that DHO failed to consider that he took medications and suffered from medical conditions which adversely affected his ability to produce a urine sample, on demand, within a two-hour period, but the DHO Report does not indicate that Julick *himself* ever advised either Lieutenant "E." Nelson (on June 16, 2014, the date on which the Incident Report was issued) or the DHO (at the hearing on July 11, 2014), that he was taking any medication that could have adversely impacted his ability to produce a urine sample within a two-hour period.

13

Admittedly, Julick may not have known exactly what impact, if any, the medications which he claims that he was taking on June 16, 2014, may have had on his urine flow, but at a minimum, he could at least have mentioned to the DHO that he was taking medications of some kind, assuming for the moment that Julick was in fact taking those medications on June 16, 2014, the date at issue. According to both the Incident Report, the original DHO Report of August 7, 2014, and the Amended DHO Report of October 5, 2014, Julick explained to DHO Baker *only* that he needed to sit down and have a bowel movement before could produce a urine sample. Nothing in the record suggest that Julick mentioned, **at the time of the hearing on July 11, 2014**, that he had taken any medications on June 16, 2014, which could or would have adversely impacted his urine flow.

Further, Julick claims in his § 2241 petition that on June 16, 2014, he was taking various drugs/medications which would have prevented a urine flow within two hours of demand, but Julick attached no medical records substantiating his allegation that **on June 16, 2014**, he was in fact taking these various drugs which might have impacted his urine flow. Indeed, the only date-specific medical report which Julick has attached is a one-page report dated over ten years ago (March 21, 2006), wherein it is noted that Julick suffered from depression, poly-substance abuse, obesity asthma, and enlarged prostate. [D. E. No. 1-3, p. 3] But that

14

document lists only one prescribed drug for Julick; to wit, Elavil, 150 mg. [*Id.*] The other medical information docketed as D. E. No. 1-3 consists of general information about the various medications which Julick claims he was taking on June 16, 2014, but this information does not suggest, much less verify, that Julick was in fact taking these medications on June 16, 2014, the date relevant to this § 2241 proceeding. Further, decreased urination is not listed as a "common" side effect for **any** of the medications described in D. E. No. 1-3. Given these facts, the Court determines that under 28 C.F.R. § 5501.31(a) Julick has failed to produce medical evidence that rebuts the presumption that he was unwilling to provide a urine sample within two hours, as he was directed to do on June 16, 2014.

A somewhat similar situation arose in *Garcia-Cortez v. Sanders*, No. SACV 11-1554-CJC MAN, 2013 WL 2417973, (C.D. Cal. May 31, 2013), wherein a prisoner filed a § 2241 petition challenging his disciplinary conviction based on his failure to provide a urine sample within a two-hour period. In his § 2241 petition, prisoner Garcia-Cortez claimed that he had been given a medical authorization giving him four hours, instead of two, in which to provide a urine sample. The district court denied the § 2241 petition, finding that at the hearing, the prisoner neither informed the DHO that he had been given a four-hour medical authorization, nor requested a review of his medical files. *Id.* at **9-10. As the

15

district court observed, "He could have—and given his language difficulties, he should have—requested a staff representative to assist him in marshaling this information instead of waiving both a staff representative and witnesses." *Id.*, at 10. The same holds true for Julick, who also waived staff representation at his disciplinary hearing.

In *Garcia-Cortez*, the district court further noted that Garcia-Cortez had also failed to inform either the investigating officer or the DHO that he was suffering from gastrointestinal difficulties at the time of the urine test, but that he argued in his § 2241 petition that it should have been obvious to investigating officer that he was sick and had diarrhea at the time of the urine test. The district court rejected his argument and concluded that "some evidence" existed to support the conviction under the "minimally stringent" standard set forth in *Hill*, stating:

> ...because Officer Isom did not mention it [his illness] in his Incident Report, it was up to Petitioner to make sure that the investigating officer, the UDC, and, most importantly, the DHO had this information. Because Petitioner never mentioned his gastrointestinal issues, his asserted condition formed no part of the evidence before the DHO.
>
> As it was, the evidence before the DHO was that Petitioner was given two hours to provide a urine sample and did not do so. Petitioner did not provide any medical explanation for his conduct. He did not provide the DHO with documentary evidence that he was entitled to take two additional hours to provide a urine sample. He did not give the DHO the version of the events set forth in the Petition.

16

*Id.* at *10.

The same rationale applies to Julick's claims in this § 2241 proceeding. Again, Julick could and should have alerted Lieutenant "E." Nelson (on June 16, 2014) and/or DHO Baker (at the July 11, 2014 disciplinary hearing) that he was taking medications that would or could decrease or eliminate his urine flow. The record does not indicate, nor does Julick allege, that he informed either Nelson or the DHO about his alleged medical conditions, his various medications, and/or the adverse effect these medications could have on his ability to generate a urine flow. Under 28 C.F.R. § 550.31(a), the failure to provide a urine sample within a two hour period is deemed to be a refusal unless the inmate rebuts the presumption during the disciplinary process.

Further, Ian Connors adequately explained that the BOP had investigated Julick's allegation that certain medications he was taking either impaired or prevented his ability to produce a urine flow on June 16, 2014. Connors explained that although Julick had been prescribed a diuretic to manage the volume overload stemming from an edema caused by from his liver disease, the medication affected Julick's kidneys, not his bladder, by inhibiting the reabsorption of sodium and chloride. [D. E. No. 1-5, p. 4] Conners explained that the medication Julick would not have adversely impacted Julick's ability to urinate, and further, contrary to

17

Julick's assertion, Julick did not need a "water pill" to induce urine flow on June 16, 2014. [*Id.*] Thus, as the DHO determined in both his original and amended reports, Julick presented no evidence that rebuts the presumption that he refused to provide Lieutenant "E." Nelson with a urine sample.

As noted, a district court's role is not to re-try a prison disciplinary hearing, weigh the evidence, or independently assess witness credibility. *Hill*, 472 U.S. at 455.   Federal courts will not review the accuracy of a disciplinary committee's finding of fact.   *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E. D. Va.1980). Further, as 28 C.F.R. § 541.8(f), and *Wolff* indicate, a DHO's decision to forfeit good time credits need not comport with the requirement of proof beyond a reasonable doubt which applies in criminal trials; the DHO need only base his or her decision on "some evidence." *Superintendent v. Hill*, 472 U.S. at 455–56; *see also Kelley v. Warden, F.C.I. Elkton*, No. 4:13-CV-662, 2013 WL 4591921, at *5 (N. D. Ohio, Aug. 26, 2013) ("Although the evidence in this case might be characterized as limited, a DHO's finding does not rely on the same amount of evidence necessary to support a criminal conviction.")   The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Superintendent v. Hill*, 472 U.S. at 457.

While Julick strongly protests his guilt, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the DHO's determination that the greater weight of the evidence supported his decision finding Sarmiento guilty of "tampering with a security device" in violation of PAC 208, even where the facts were in dispute); *Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006) ("While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.")

Further, to the extent that Julick claimed that the BOP ignored its own procedure and policy (PS 6060.08) either by not giving him either more time to produce a urine sample, or better conditions under which to produce that urine sample, or that the BOP failed to fully investigate his medical status as required by 28 C.F.R. § 550.31(b), he states no grounds entitling him to relief.   The requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines.   *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Thus, an agency's alleged failure to adhere to

19

its own policies or guidelines does not state a due process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *Slater v. Holland*, No. 0:11-CV-86-HRW, 2012 WL 1655985, at *5 (E.D. Ky. May 10, 2012).

Finally, Julick's claim that he did not receive his copy of either the original DHO Report and/or the Amended DHO Report in a timely manner simply lacks merit. Julick received the original DHO report on August 13, 2014, and proceeded with his timely administrative appeal to the MARO. Julick received the Amended DHO report on November 18, 2014, and submitted his BP-11 appeal to the BOP Central Office appeal on November 19, 2014. Julick suffered no prejudice from the lapse of time between the issuance of the original DHO Report on August 7, 2014, and either the issuance of the issuance of the *amended* DHO Report on October 5, 2014, or receipt of the amended DHO Report on November 18, 2014.

Because Julick is not entitled to relief from either his disciplinary conviction or the sanction ordering the forfeiture of 40 days of GTC, Julick's § 2241 habeas petition will be denied.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

20

1. James J. Julick's 28 U.S.C. § 2241 petition for a writ of habeas corpus [D. E. No. 1] is **DENIED**;

2. The Court will enter an appropriate judgment; and

3. This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This October 25, 2016.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

21